Judge Marshall

delivered the Opinion of the Court.
These writs of error are prosecuted by the infant heirs of Polly McKee, to reverse the proceedings and decrees by which two tracts of land descended to them, were sold and conveyed — the one to Hann, and the other to McKee, through Letcher, who transferred the benefit of the purchase to him. The writs of error having been amended, on motion, so as to make the infant heirs sole plaintiffs in both writs, and in the first, to make the devisee of the purchaser of the first tract, and the commissioner who was appointed to collect, and who still holds, the purchase money, defendants, as survivors of Darius McKee, the father of the infants, by whom, as their natural guardian, the petition was filed; and the second writ being amended so as to make defendants the first purchaser, and his transferee—the former being the person upon whose petition, as guardian of the infants, the second tract was sold, and who has only given bond for the purchase money—it seems to us, that all substantial grounds for quashing the writs of error on account of the confusion of defect of parties, have been entirely obviated.
If a writ of error be at all allowable for the reversal of proceedings of this character, where there are no parties to,the petition except the guardian for the infants, or the infants by their guardian or friend, it cannot be required that such writs should be tested by precisely the same rules as are applied in other cases. Both the writs appear to have made all the persons shown by the record to be substantially interested in the proceeding, parties.—Darius McKee was not formally a party to the first petition, which was, in the- names of the infants, by him, as *527 “their father, friend and natural guardian. ”And if it were conceded that he should, if alive, have been made a party, it would be difficult to say who should be made a party to the writ of error expressly as his representative; or why any one should be, unless his place in the suit had been supplied in the court below. If this has been done at all in this case, it has been by the substitution of H. W. McKee, who is a defendant in both writs. The right of the infant heirs to prosecute a writ of error in cases like the present, having been recognized in the cases of Coger vs Coger, 2 Dana, 270, and Power’s Heirs vs Barbee, 8 Dana, 154, we do not feel at liberty now to deny it; and the motion to quash the writs is overruled.
Infancy of the pltfs. in error, in such cases, saves their writ from the bar by the statute of limitations.
A plea of the statute, in such case, must show that the infants have arrived at full age, and been bar red by time since elapsed.
Petition for a sale of real estate of infants (now plaintiffs in error;) and proceedings thereon in the Circuit Court.
The infancy of the plaintiffs in the writs is a sufficient answer to the plea of the statute of limitations. To say that their guardian, or other person by whom the proceeding was instituted in their names, or for them, must be a plaintiff with them, in the writ of error for its reversal, would be contradicting the principal on which they are allowed to maintain the writ; and would often deprive them of the chief benefit of that right. And especially, if their right is subject to be barred in three years, because the officious friend, who may have ruined their fortunes, is an adult. The replication of the continued infancy of the plaintiffs being sufficient, and undenied, removes the bar set up in the plea; and moreover, the plea itself, to be good, after the change in the form of the writ, should have shown that the plaintiffs had arrived at full age, and were since barred by lapse of time; which it does not show.
These preliminary questions being disposed of, we go on to state the proceedings, as presented by the record.
On the 27th of March, 1828, Darius McKee swore to and filed in the Garrard Circuit Court, a petition in the name of William and Jane McKee, by him as “their next friend, father and natural guardian, ” stating that a tract of land, which is designated, had descended to them from their deceased mother, in which their father had a life estate by the curtesy; that they have no other estate but said remainder; which it would be for their advantage *528 to sell, and have the proceeds appropriated to their use, and they pray for such proceedings as may be proper to promote and preserve their interest.
Commissioners were immediately appointed to value the interest of the infants in the tract of land referred to in the petition : who reported, in September, 1828, that so much of said tract as lay south of the Danville road, was involved in a suit brought by Buford’s heirs, and they thought it would be inexpedient to sell that portion of it at that time; but that so much of the tract as lay on the north side of the road, supposed to be about 150 acres, was unincumbered by adverse claim, and might be conveniently sold, and they estimate the interest of the infants in the same at five dollars per acre. They further say that, they know of no other estate of said infants.
At the September term, 1828, Jesse Yantis was appointed to sell the land upon the north side of the road; at one, two and three years credit—taking bonds with security, payable to himself, and giving a certificate of purchase to the purchaser, &c. And, at the March term, 1829; he reported a sale to John Hann, for one thousand and ninety four dollars and nineteen cents, and returned into Court the three bonds for the purchase money. The report was approved, and the bonds directed to be filed, subject to the future order of the court; which was done.
At the September term, Hugh W. McKee was appointed Commissioner to collect and receive the purchase money from Hann, with leave to take out the bonds, on leaving copies—the commissioner, Jennings, being directed to assign the bonds for the purchase money to said Hugh W. McKee, the guardian, as he is called, of said infant heirs. But he was not authorized to act under the decree, until he should execute bond, with a named security, to the infants, conditioned that he would use ordinary diligence in collecting the money, and that when collected, he will use and apply it for the use of the infants, in the same manner and to the same extent that guardians appointed by County Courts are authorized to use and apply the money of their wards; and that he would, when required, report to the Court his actions under the decrees.
Amendment to the petition,— and proceedings thereon.
Shortly after this decree, in October, 1829, H. W. McKee executed a bond in the clerk’s office with the designated security, conditioned that he will collect, use and apply the money according to the terms of the decree, and that he will “in all respects discharge the duties of his appointment, and agreeably to the decree herein.”
The record proceeds to state that, on the 26th day of June, 1830, Hugh W. McKee, the guardian for the heirs of Darius and Polly McKee, came and swore to and filed an amended petition herein, whereupon commissioners were appointed. This amended petition is in the names of William and Jane McKee, by Hugh W. McKee, their guardian and nearest friend, and states that, in addition to the land mentioned in their original petition, to which this is intended as a supplement, their mother had two other tracts in different counties, which, for reasons given they wish to be sold. Of these tracts, one was valued at six and one fourth cents, and the other at one dollar, per acre; but the record contains no further proceeding as to them, after the commissioner’s report.
The record, however, states that, on the 22d day of September, 1830, “came the complainant, and filed an amended petition herein,” whereupon commissioners, the same who were appointed by the first order on the original petition, were appointed to value the land in the amended petition mentioned.
This second amendment commences as the last does, in the names of the infants, by H. W. McKee, their guardian and friend, and expressly, by way of supplement to their original petition, states that the suit of Buford’s heirs, adverted to in the commissioner’s report, had terminated in favor of the petitioners; that the land designated by the commissioners as covered thereby, was free from incumbrance except the curtesy of their father, Darius McKee, which is now owned by Hugh W. McKee, and they think a sale of said land would redound to their interest. They, therefore pray that this may be taken as a part of their original and amended petition, which they reassert, and pray for a sale, &c. They also add that, since filing their original petition, Hugh W. McKee has been regularly appointed their guardian by *530 the County Court of Garrard, and an order of said County Court is, at this place, copied in the record, dated July 21, 1829, and appointing H. W. McKee guardian of William and Mary Jane McKee, infant orphans of Dark us and Polly McKee.
In September, 1830, the commissioners appointed under the last amended petition, reported that the value of the land lying on the south side of the road, that is, of the remainder coming to the infant heirs of Darius McKee, after the death of said Darius, was five dollars per acre.
At the March term, 1831, a decree was made directing a sale of the interest of the infant petitioners in the land south of the Danville road, on a credit of one, two and three years, with interest from the date, the purchaser giving bond with security, and Jesse Yantes was appointed commissioner to sell, and directed to give the purchaser a certificate, stating that the title would be conveyed when the purchase money should be paid.
On the 22d day of June, 1832, the commissioner reported that on the 2d day of May, 1831, he had sold the land at public auction, &c. and R. P. Letcher became the purchaser, at the price of eight dollars and eight cents per acre; there being three hundred and fifteen acres, which makes the sum of $2537 12; and that “the purchaser, after the sale, transferred said land, by written agreement, to Hugh W. McKee, Who is the guardian of said William and Jane McKee, and who refused to execute bond for the purchase money,” which transfer is referred to and returned with the report.
That instrument, which is dated on the 24th day of’ September, 1831, after reciting the decree and sale, and the purchase by Letcher, proceeds thus: “ And whereas, Hugh W. McKee, the guardian of said infant heirs, and the proprietor of the life estate of said Darius McKee, in said land, being disposed to take and receive the purchase of the said Letcher,” they mutually agree, &c. &c. When this report was returned into Court, does not appear. It is first noticed in a decree made on the 20th of March, 1833; which states, that it appears from the report, that the land was sold, and purchased by Letcher, and that he *531 afterwards transferred the benefit of the purchase to Hugh W. McKee, who was then the county court guardian for the complainants, “and it is believed that said transfer was fair and in good faith”—the Court now decrees, that so soon as the said Hugh W. McKee shall execute and give bond, in the clerk’s oifice, in the penalty of five thousand dollars, with R. P. Letcher and Jesse Yantes, his securities, payable to the infants, William and Jane, conditioned to pay over the purchase money to them, when they arrive at full age, or to such other as may be legally authorized to receive it, then the Court will ratify and confirm the transfer from Letcher to McKee, and will also, make another and further decree for the conveyance of the legal title.
Conveyance of one of the tracts of land to the devisee of the purchaser.
In compliance with this decree, a bond was forthwith executed, conditioned to pay over $2537 12, with legal interest, to the persons designated in the deeree, and on the next day, this bond is recognized by the Court, and a decree rendered, appointing a commissioner to convey the land lying on the south side of the road, to McKee, with general warranty. On the following day, (22d of March, 1833,) a deed from the commissioner to H. W. McKee, was presented to and approved by the Court; which went on to decree and order, that all the right, title and interest of William and Jane McKee, pass and vest in said Hugh McKee.
This is the end of the proceeding so far as it relates to the sale of the land on the south side of the road. But it may be here stated, in regard to the other part of the tract, which was first sold, that, on the 21st day of March, 1835, John Hann, the purchaser at the first sale, came into Court, and it appearing that he had paid up all the purchase money, a commissioner was appointed to convey to him, the land on the north side of the road, with general warranty. But the said John Hann having died before the conveyance was made, and having devised the land to his wife, Jane Hann, who is a defendant to the first writ of error, the commissioner was afterwards directed to convey to. her, which was done, and the deed approved in September, 1836,
Writs of error, & the objections to the proceedings and sales, relied upon as errors, for which they should be reversed and set aside.
Where the property of infants has been sold under a decree, upon petition, and been sold again by the purchaser, the appellate ct. will not direct a restoration of the property, upon reversing the decree, even tho’ the decree is void — nor will it go on to regulate the ultimate consequences of the reversal.
The act authorizing sales of the real estate of in ants in certain cases, requires that the proceedings shall be founded upon the petition of their guardian; and as it does not authorize any other person to petition, proceedings founded upon the petition of any other, are coram non judice, and. void. But—
*532 The writ of error against Hann and McKee, is prosecuted to reverse the proceedings and decree and sale, as to the land first sold, on the north side of the road, and the writ against Letcher and McKee, is prosecuted for the reversal of the proceedings, decree and sale, as to the land on the south side of the road, which was last sold.
Objections are taken to the competency of Darius McKee, as father and natural guardian, to institute this proceeding, and also to the competency of H. W. McKee, who filed the supplemental petition, under which the last gale, was made, and to the want of affidavit to that petition; and also, to the terms of the order appointing commissioners to value the infant’s estate, in each case, to the omission to take bond from the guardian before the sale was ordered, in each case; to the nature of the condition of each of the bonds afterwards taken; to the ratification of the transfer from Letcher to McKee, and the confirmation of the purchase, to the latter, &c. &c. And we have been urged, on these and other grounds, not only to reverse the proceedings, but. to declare them void, and to direct a restoration of the land to the infants., and of the money to the purchasers; and also, an account pf rents and profits.
We are not aware, however, of any precedent or principle which would authorize a tribunal having merely appellate jurisdiction, upon a reversal of a decree, even if it be void, to direct, in the first instance, and without any proceeding instituted in the court of original jurisdiction, a restoration of property which may have changed hand? under the reversed decree. There is enough of anomaly in taking jurisdiction by writ of error, to reverse a proceeding which has such slight claims to, the character of being judicial. And, although we are of opinion, that such a proceeding should not, after a sale has been made, and carried into complete effect, be reversed, unless there be some defect or irregularity which would be apparently sufficient to avoid the sale itself—we do not feel at liberty to go on and regulate in detail the ultimate consequences of such a reversal.
We shall notice first, the objections which apply to, the first sale. The most fundamental of these is, that Dari *533 us McKee, the father of the infants, had no right under the statute to institute the proceeding. If this objection be well founded, the Circuit Court had no jurisdiction to proceed in the case, as was decided in the case of Vowles’ Heirs vs. Buckman, 6 Dana, 466; and the first sale must necessarily fall. It is. undoubtedly true, by the ex. press terms of the statute authorizing the sale of infants’ lands (Stat. Law. 806,) that no one is authorized to make the application to the Court, except the guardian, and the Court is not authorized to proceed in any such case, and to any such purpose, upon the application of any one but the guardian of the infants, In the case just cited, the Court went so far as to say, that it must be the regularly appointed guardian, thus clearly intimating the opinion, that it must be a statutory, or at least a testamentary, guardian. But, in that case, the petition, was filed by counsel, the adult and infant heirs joining therein, and the infants petitioning by the husband of one of the adult heirs, as their next friend merely, who did not style himself their guardian, and made no pretensions to that character. The case did not present the question, whether there might not, under certain circumstances, be a person who, though not the regularly appointed guardian, might still be a guardian, or the guardian, and thus fill the character described by the act, and to which alone it confides the right of initiating this proceeding. The intimation above noticed, is not, therefore, entitled to the weight of a judicial decision upon the question just stated, which may not have been present to the mind of the Court when the above cited language was used. And as that question arises necessarily, and for the first time, in this case, we have felt free to consider it as ‘res non adjudicata.’
As the father is the natural guardian of his children, and is the proper person to, exercise the powers of a guardian, in relation to there at estate of his. children, when, he is competent, and they have no. other guardian—and no other, it seems, can be appointed while he is. living—he is. within the meaning of the act, & may present a petition for the sale of the real estate of his children; upon which the court may take jurisdiction, and decree the sale,
That the father is to some purposes the guardian of his infant child, is not contested. But, it is argued that he is only the natural guardian; that, in that character, he has the care of the infant’s person only, and not of his land; and that, as no other statute refers to the father in his character as guardian, or gives him that appellation, this statute which confers extraordinary power upon ‘the guardian,’ should not be understood, as refering to the *534 father under the appellation of ‘the guardian.’ But if, under any circumstances, the father may properly be called the guardian, if he be in fact the only guardian, and. as such have the right to manage and control the real estate of his child, the whole basis of the argument fails; and, in applying the statute to such a case, he must be considered as ‘the guardian’ who is empowered to do the act, unless there be something in the statute to show that, under the particular circumstances in which he is the guardian with the powers of a guardian over the estate, the act itself was not intended to be authorized.
As to the character and power of the father, as guardian, it is laid down in Blackstone’s Commentaries (Christian’s Blackstone, vol. 1, page 453,) that, “a father has no other power over a son’s estate, than as his trustee ex-guardian for though he may receive the profits during the child’s minority, yet he must account for them when he comes of age. ” And again, in page 461, the same author says: “For if an estate be left to an infant, the father is, by common law, the guardian, and must account to the child for the profits.”
It may he added that, in case of lands descending to an infant, if is in general necessary that there should be some one having the right and power over it which generally belongs to a guardian; that, if there be no guardian appointed by public or other authority, and until there be one, the father, if he be living and capable, is indicated by nature and reason, and by the common law too, as the proper person to exercise the power which should be exercised by some one. And that as the ordinary tribunals having jurisdiction of the subject had no right, at the passage of the statute, and at the date of these proceedings, (as was decided in Poston vs Young, 7 J. J. Marsh. 501,) to appoint a guardian for an infant during the life of his father, it would seem to follow that the father, being from necessity, invested with the general character and powers of a guardian, as to the real estate of his infant child, and being recognized in law by the name of guardian, should be understood, as being embraced under that denomination in this statute-unless it appears that the power conferred, is not intended to be exercised in a case in which the father would be the guardian.
*535 But this, in our opinion, does not appear. On the contrary, although a general inference may be drawn from the statute, that the Legislature did not particularly contemplate the case in which the father would be the guardian, and only guardian, of an infant to whom land has descended, and although it may be also inferred, that the Legislature looked to the more common case of the father of the infant heir being dead, and his estate being under the guardianship of a regularly appointed guardian, yet there is no very distinct ground for these inferences, unles it be assumed that the word guardian is used in the restricted sense; which is to assume the very point in question. And as the case of an infant on whom lands have descended in the life time of his father, is as clearly within the object and policy of the act, as declared in the preamble, as that of any other infant is—nothing less than the entire inapplicability of the substantial provisions of the statute, or some of them, to such a case, would clearly show that it was not intended to be embraced. To test this branch of the argument, it may be supposed that the County Courts had authority to appoint guardians for infant heirs during the life of the father; that Darius McKee had been appointed guardian, and as such, had filed the petition for the sale of this estate: we presume it could not be contended, that the case was not one intended to be provided for by the statute; and it cannot be admitted that the fact, that theie could be no statutory guardian at that time, excludes any infant heirs from the benefit of the power, which is declared to be just and politic, when, as has been shown, their father might come’ within the description of the person to whom the exercise of that power was entrusted by the statute, and when there is nothing in the statute itself necessarily incompatible with the idea that the father, when he is the guardian, whether by appointment or not, is authorized to act under the statute.
The statute expressly Authorizes the estate descended to infants to be sold by this proceeding, whether it be in remainder or reversion. Its declared policy extends to all infants to-whom land has descended, without excepting those whose father may be living. It may be as advantageous *536 to such infants as to others, that there should be a power to sell their estates, whether in possession or remainder. And it may be as advantageous, and as necessary, to sell their estate in remainder, when the particular estate is in their father, as if it were in another.-There is no reason why the judgment of the father should be less confided in, than that of the statutory guardian, as to the propriety of selling the infants’ estate, and the statute indicates no such distinction. And by requiring a bond for the security of the infants, in every case, it shows that it does not rely on the ordinary responsibility of the statutory guardian, and removes every substantial objection to the conclusion, that the father as guardian might institute the proceeding with effect, when there was not and could not be any other guardian.
The petition should be in the name of the guardian, (not of the infants,) and contain his statement of facts, & his opinion as to the propriety of the sale.
The statute requires that, upon a petition for a Sale of any estate of infants, all their estate shall be valued, and the valuation reported to court. But, where the petition (as Sworn to) stated that the land pro posed to be sold, was the whole, and the commissioners’ report stated the same, the fact, that it afterwards appeared, by an amended petition, that there was other land of the infants, cannot vitiate a sale made and confirmed, before the amendment was filed. And where the infants have no personal estate, the accidental Omission of some real estate, may be deemed a merely formal objection, which cannot affect a purchaser.
*536 In strict propriety, the petition under the statute should be filed in the name of the guardian, and should contain his statement of facts, and of his own opinions as to the propriety of a sale. But the form of the petition in this respect, is not made a ground of objection in this case, and we need not decide upon the effect and consequences of a departure from that which is strictly proper.
The next objection to be noticed, is that the order appointing the commissioners to value the estate of the infants, does not direct the valuation of any thing but the land mentioned in the petition, when the statute requires the valuation of the whole estate, real and personal. To this it may be answered, that the petition sworn to by the guardian, states that the infants had no estate except the land therein mentioned, and the commissioners report the same thing. And as the fact, that there was other estate, consisting of lands, does not appear in any part of the record to which the purchaser at the first sale can be considered as a party, he having been brought into the case by the first amended petition filed by H. W. McKee, after the first sale was confirmed, it should not be considered, in the revision of that part of the proceeding. We may observe, however, that, as there is no ground for presuming, in opposition to the statement of the petition, that the infants had any personal estate, the defect in the order may be considered as merely formal. And the ap *537 parent object of the whole proceeding being to provide some income for the support and education of the infants, and the lands brought to view in the first amended petition being of small value, and not capable of affording the desired benefit, it may be considered certain that, if they bad been brought into view, and valued in the first instance, they would have formed no obstacle to the sale of the tract now in question. And as it must be presumed that the father and guardian did not in fact know of the interest of himself and children in the other lands, this omission cannot be deemed to have invalidated the sale.
A failure to take a bond of the guardian before the sale, as required by the statute, trill not be fatal to the sale, provided there is one taken after the sale, which secures all the objects of requiring bond. The only consequence of the omission, in such case, is a suspension of the effect of the order and sale until bond is given. But an entire failure to take bond might invalidate the sale.
The third objection is to the failure to take a bond from the guardian before the sale was ordered and made. And this failure, it is contended, is such a departure from the requisitions of the statute, as to render the sale void, though a proper bond should be taken immediately afterwards, securing every object that could be effected by having taken it before. But this cannot be conceded. The statute, it is true, requires that the bond shall be executed before any order of sale shall be made, and this requisition ought to be pursued. But when it must be conceded that this requisition has no other conceivable object, but to secure the proper custody and application of the proceeds of the sale, it is obvious that a bond executed immediately afterwards, may have the same effect. And the Court having obtained full jurisdiction by the petition, presented in a proper case, and by a proper person, the innocent purchaser must be permitted to repose some confidence in that part of the proceeding which takes place under the direction and supervision of the judicial tribunals of the country, if the objects and requisitions of the statute be substantially complied with, To determine that there must be a strict and literal compliance with every requisition of the statute, and that, for a failure in the slightest particular, the sale may be avoided at any time until the infant shall be barred after he arrives at full age, from asserting his right to the land by action, would either virtually repeal the statute by reason of the improbability of making a valid sale, or would subject the interest of infants to certain sacrifice, in every proceeding under the statute, by reason of the great hazard which *538 every purchaser would incur of eventually losing the land. The judicial policy, or the policy of the common law, may be opposed to the sale of an infant’s estate. But the judicial, must yield to the legislative policy, when sufficiently manifested. If sales are to be made under this statute, it is the policy of the law, as often declared by this Court, in other cases, to give a reasonable degree of confidence in such sales, and to secure a fair competition in the purchase by sustaining the sale in every case where the Court has jurisdiction to decree it, and where there has not been such a departure from the requisitions of the statute, or such a gross abuse of discretion by the Court, as tends manifestly to sacrifice the interests of the infant, and the objects of the statute. While, therefore, we are satisfied that, an entire failure to take the bond required by the statute, would avoid the sale; and that there is, in effect, no valid sale, or no transfer of right to the purchaser, until the interest of the infant is secured by a bond, substantially conforming to the statute; and while it may perhaps, be true that any unreasonable delay in requiring, or in giving the bond, might be ground for avoiding the sale, we are of opinion that, the mere fact that the bond is given after, instead of before, the order of sale, or the sale itself, should not render the proceeding void. If the object of the bond were to secure the fair conduct of the person who makes the sale, this object could only be answered by its being executed previous to the sale. But as it is directed to be executed by the guardian, and the sale maybe made by another, this cannot be its object; and it seems to us, that, although the omission to take the bond before the order of sale is made, is contrary to the directions of the statute, yet, as every purpose of the requisition may be answered by a subsequent bond, the omission may be supplied afterwards, and that, until it is supplied, the only consequence is, that the effect of the order and sale are suspended.
The bond required of the guardian of the act is for the faithful performance of the duties imposed or him by it any order or decree of the court; and the only duties required by the act, are to make reports of his proceedings when required. The application of the proceeds of the sale, is left to the court, which may dispose of them, for the benefit of the infants, by its decrees and orders from time to time; and a failure to make any disposition of them, could not affect a sale of the estate.
*538 The next question is whether the bond taken in the first case, is substantially conformable to the statute, which requires that it shall be conditioned for the faithful discharge of all the duties imposed upon him (the guardian,) by the act, or by any order or decree of the Court *539 in pursuance thereof. The only duties expressly required by the act, are that he shall make report of his proceedings when required, which is expressly reserved by the bond executed. The Court itself, being empowered, on application of the guardian or next friend, to make such decree from time to time, for the appropriation of the proceeds as it may think equitable and consistent with the interest and welfare of the infants, the statute does not direct the appropriation of the funds, but leaves this to the Court. And it could not be supposed that the sale could be effected by an unwise appropriation of the proceeds, or by a failure of the Court at any time to direct a specific appropriation of them, provided they, were secured, with reasonable profit thereon, to the use of the infants. In this instance, the Court has placed the fundin the hands of H. W. McKee, to use and appropriate them as county court guardians may do; which shows that the object of the sale was to raise a fund for the maintenance and education of the infants; and even if, by the insertion of this condition in the bond, the Court should be considered as depriving itself of the power to make any other disposition of the funds than it could do if they were the ordinary funds of an infant in the hands of an ordinary guardian, although this would be placing the funds in a situation somewhat different from that contemplated by the statute, it would be disposing of them as the Court, in its discretion, thought they should be disposed of; and the condition of the bond being to make that very disposition of them which the Court decreed should be made, it does secure the performance of the only decree which, on the hypothesis assumed, the Court could make on the subject.
And where the condition of the bond is that the guardian who is to have charge of the funds, shall use and appropriate them as county court guardians may do — and it appears that such was the disposition which the court thought ought to be made of them—it is a substantial compliance with the statute.
But if, as we are disposed to think is the case, the Court retained the power given by the statute, to control the proceeds of the sale, notwithstanding the special form of the condition, it appears that the bond, as actually executed, goes further than the order for its execution, in.binding the commissioner to discharge in all respects the duties of his appointment, and this was approved by a subsequent order of the Court. The duties of his appointment are, of course, those which are ex *540 pressly and impliedly prescribed by the act, and the bond, as executed, is, therefore, in this respect, substantially and almost literally conformable to the requsitions of the statute.
Tho’ the statute requires that the guardian shall give bond before the sale, the court might, for good cause, change the custody of the funds, or change the receiver, and require a proper bond of the party authorized to take charge of the funds. And, tho’ errors might intervene in such proceedings, for which the decree might be reversed-the displaced guardian, rather than the infants, would have the right to complain of them; and they could not affect the sale by which the fund was produced.
But it is said the bond is not executed by the guardian as directed by the act, which says the order of sale shall not be made, unless the guardian of the infant shall previously have entered into bond, &c. It is evident that H. W. McKee, who had before this time been appointed guardian by the County Court, and who is called the guardian of the infants, in the order requiring him to execute the bond, was then regarded by the Court as the true statutory guardian, and that, in placing the funds in his hands, and requiring him to execute bond, the Court was pursuing, as it then supposed, the literal directions of the statute. But as it has been decided in the case of Poston vs. Young, (7 J. J. Marsh. 501,) that the County Court could not appoint a guardian while the father of the infants was alive—we pass this circumstance by, as showing only the intention, in good faith, to pursue the statute. And the question is, whether what must now he considered as a departure from its letter, in requiring H. W. instead of Darius McKee, to execute the bond, and take charge of the funds, is to have any effect upon the sale. Suppose that, after, or even before the filing of the petition, Darius McKee had become unworthy of being entrusted with the custody and management of the proceeds of the sale, or incapable of properly attending to it, or had left the country, was this circumstance, which would render the sale the more necessary for the suitable maintenance and education of the infants, and which may have been one of the grounds for resorting to the Court for a sale, to stop the proceeding entirely, and deprive the Court of its power to decree a sale. This "would be to sacrifice the great object of the statute, in almost the only cases in which its wisdom may not be doubted, to its literal requisition, in a point not essential to the attainment of any of its purposes. The only object of the bond, as already said, was to secure the funds, and keep them subject to the order of the Court. It was required to be executed by the guardian, for conformity only. The *541 Court might undoubtedly change the custody of the funds at any time after they had come to the hands of the guardian, and we do not doubt that, in its discretion, it might change the receiver, as well as the keeper. And although in either case, the making of such a change might be deemed erroneous, unless the reasons for it appeared, we do not perceive that, in either case, it should affect the validity of the sale, even if no reason appeared for it. We must say, however, that although the order of the county court appointing II. W. McKee guardian of those infants, did not make him the statutory guardian, it may be presumed to have been made because that Court supposed it necessary that some other person than the father should have the guardianship of these infants, and the concurrence of the two Courts, on this point, may authorize the presumption that, there was some reasonable ground for it. But be this as it may, the giving of the funds even to a wrong person, who is made to secure them subject to the control of the Court, does not go to the jurisdiction of the Court to make the sale, and does not affect substantially the interest of the heir, and even, if the order giving them to H. W. McKee, might, under ordinary circumstances, be reversed, it would seem more proper to be reversed on the complaint of the guardian, who had in effect been displaced, than of the infants who are not affected by it. But in either shape, the reversal of this order would not affect the sale.
Tho’ divers errors occurred in the proceedings for a sale of infants estates, for which the decree might have been reversed, if an appeal or w. e. had been prosecuted before the sale, as none was prosecuted till after the sale was made and confirmed and the money paid, and none of the errors are of a character to affect the sale—the decree is affirmed.
Upon the whole, therefore, we are of opinion that, although the proceedings in the first case, vary from the literal prescriptions of the statute in many particulars, for some of which it might have been reversed upon any writ of error which would have had the effect of suspending the sale, or the order confirming it—yet as the writ of error was not prosecuted until the sale was complete by payment of the purchase money on the one side, and a conveyance of the land on the other; and, as none of the errors which may have intervened seem to be of a character to affect the sale itself, or to defeat any substantial object of the statute, or interest of the infants—the proceedings and decree in this case, will not be reversed, but are affirmed.
A. tract of land belonging to infants having been struck off at a sale under a decree cree upon a petition—the purchaser failed to comply with the terms of sale, and transferred his purchase to another, who claimed to be the guardian of the infants, and who had also acquired a life estate (of their father) in the land; this subpurchaser, refused also, to comply with the terms of sale; and these facts were reported to court. About two years afterwards, the court, recognizing the sub purchaser, permittedhim to file his bond with surety, for the amount bid for the land, but essentially different, in other respects, from the terms of the sale and tho the land in the mean time, by the natural shortening of the term of the life estate, and other causes, had become, more valuable, the court caused the title to be conveyed to him, and approved the deed. Held that, upon the report made to court, the first purchase should have considered as abandoned—anullity and a new sale sho’d have been ordered, if for the interest of the infants; that the conveyance of the land to the subpurchaser, on the terms upon which it was conveyed, was, in fact, a new sale, less favorable to the infants, and which the court had no authority to mate in that form; the sale was therefore invalid, and is annulled.
*542 In the other case, of W. and J. McKee vs R. P. Letcher and H. W. McKee, it is contended on the part of the defendants; that the original petition filed and sworn to by Darius McKee, not having been expressly disposed of by the Court, except as to one portion of the land therein prayed to be sold, should be regarded as still pending when the last supplemental petition was filed, by H. W. McKee, suggesting that the litigation relating to the other portion, was at an end, and that it would be advantageous for the infants to sell it, and that, consequently, whether H. W. McKee had or had not a right to institute the proceeding by petition, the Court had jurisdiction of case as to the whole tract. If this be so, it might perhaps be a consequence that, the Court might, at the suggestion of any person even as the friend of the infants, that the litigation which had obstructed the sale of the northern part of the tract was ended, have proceeded to decree the sale of that portion, within a reasonable time after the filing of the petition, and before the circumstances of the infants could be presumed to have been materially changed. But we do not deem it necessary to decide any of these questions in this case, nor to say whether the supplemental petition in question, should be held to all of the conditions of an original petition; and we do not decide these points, because, in our opinion, there are fatal errors in the subsequent part of the proceeding, which even if the Court had jurisdiction to sell this part of the land when it was ordered to be sold, go, so far as the facts appear in this record, to invalidate the sale as made, and the confirmation and subsequent proceedings upon it, by the Court.
The sum of the objections to this part of the proceeding is, that the sale, though ordered to be made on terms substantially consistent with the objects of the statute, though formally made upon those terms, so far as the mere exposure of the estate to sale and crying it off to the highest bidder went, was never completed according to those terms. The highest bidder as we are bound to.assume, upon this record, did not give bonds for the purchase money, and the commissioner did not give any certificate of purchase. Thirteen months after the sale, *543 these facts are reported to the Court, with the additional fact, that the highest bidder had, four months after the sale, transferred the land to H. W. McKee, the guardian of the infants, and that he refused to give bonds for the purchase money; of which the first instalment was then due, according to the terms of sale. And nine months after these facts are made known, the Court, recognizing H. W. McKee’s character as guardian, and being of opinion that the transfer to him was fair, offered the land to him, not upon the terms of the sale which had been formally made, but upon his giving bond for the principal sum bid for the land two years before, to be paid to the infants when they came of age, without even the reservation of interest until that time. It is true the bond as executed, secures the payment of interest, though without saying from what time. But, if it should be understood as admitting a reference to the terms of the sale, and as securing interest from the date of the sale, which is by no. means certain, still the terms on which the sale is made to H. W. McKee, are much more advantageous than those on which the land Had been directed to be sold two years before, in this, that while the price per acre is the same, the day of payment is postponed, and he is to receive the title immediately, on executing bond. On the other hand, these new terms of sale secure no advantage to the infants. By the condition of the bond, the proceeds of the sale are not subjected to the control of the Court during the infancy of the heirs, but are apparently placed beyond it. They do not furnish any means of support or education to the infants; they are not to be accumulated, by being kept constantly at interest, as is required of ordinary guardians. And as it is to be presumed that the interest of the heirs in the land must have become more valuable when they came of age, and was becoming more and more valuable every year, by the nearer approach of the termination of the intervening life estate, there is no ground for the presumption that a sale at the time when this purchase was offered to H. W. McKee, and on the terms then offered, could have been in any manner advantageous to the infants, or could have *544 been proper or necessary according to any object of the statute.
If Letcher, or his transferee, McKee, had the right, after two years delay, to insist upon carrying the sale into effect they could have only insisted on the same, or substantially equivalent terms, and the Court would have had no right to vary the terms to the disadvantage of the infants. But the facts assumed, show that, neither the purchaser at the sale, whether nominal or real, nor his transferee, whether claiming fairly or otherwise, had any right to insist on the completion of the sale, even on the original terms, after a refusal, for two years, to comply with those terms on their part. What may not have occurred within those two years? For all that appears, Darius McKee may have died in that time, or his speedy death may have become certain or probable; the land itself may have risen in value; the remainder belonging to these infants, had certainly become more valuable. Why did Letcher and McKee fail and refuse to carry the sale into effect on their part, for nearly two years?
It was, in our opinion, the right and duty of the Court to regard the sale of May, 1831, as abandoned, or rather as a nullity, and to order a re-sale, if it deemed a sale advantageous to the infants, instead of offering their estate in the land to H. W. McKee, upon more advantageous terms. The fact that he had assumed the character of guardian, or even of friend, to the infants, in carrying on this proceeding, and that, while he had thus identified himself with them, he was the holder of the life estate, and as such, had an interest in acquiring their remainder, strengthens the conclusion just expressed. These facts are calculated to awken all the vigilance of the Chancellor, and authorize and require the exertion of all his powers, for the protection of those infants, against an individual, whose position identified him with them, and made him their agent and trustee in the conduct of this proceeding, while his individual interest was in some degree hostile to theirs.
We are satisfied, therefore, that even if this proceeding be deemed valid up to the order of sale, and including it, the subsequent proceedings derive no aid whatever, *545 from that order, or from what went before, and that the transfer of the interest of the infants to H. W. McKee, upon the terms on which it was made, was, to all intents, a new sale, which the Court had no right or power to make in that form.
The want of an oath verying a petition for a sale of infants’ estate is sufficient ground for reversing the decree when the sale itself is too irregular to stand.
We are of opinion, therefore, that the orders offering the estate of the infants in the land south of the Danville and Lancaster road, and directing a conveyance thereof, to him, and confirming the said conveyance, are erroneous, and apparently void; that, on the facts appearing in the record, or plainly deducible from it, he is not to be regarded as a purchaser under the statute, and no title passed to him by said conveyance. We are also of opinion that, the failure to support the last supplemental petition by oath, is an error which, whether it would suffice to avoid the whole proceeding or not, is a sufficient ground for reversing it, when the subsequent proceeding and sale are apparently void.
It is to be understood, however, that the opinion herein expressed, as to the invalidity of the sale and conveyance to H. W. McKee, is founded upon the facts appearing in this record, and clearly deducible from it. Whether these facts are conclusively established by the record, as against all persons who may have acquired interest in the land, or whether they may be litigated in any proceeding for obtaining restoration, and whether Letcher, who is a party in this Court, but who was not a party in the Circuit Court, should be concluded by this record, and if he should not, how far any person claiming under him may be concluded, are questions not decided. We only mean to decide that upon this record, the sale and transfer of the title of William and Jane McKee to H. W. McKee, appears to be invalid, and that because it does so appear, the proceeding is reversible.
Wherefore, the entire proceedings upon the supplimental petition, filed in September, 1830, and so far as relates to the land on the south side of the Danville and Lancaster road, are reversed; and that branch of the case is remanded, with directions to dismiss the petition as to that land, unless, by further proceedings in relation to it, *546 the petition should be made conformable to the requisitions of the statute.
May, 13.