Cyrus H. Sharp, administrator, *et al.*, plaintiffs in error, *vs.* Tullia P. Findley *et al.*, defendants in error.

1. Where there is no probability, under the evidence that infants had knowledge of their rights when a sale of their property took place under a decree, the court should not charge that if they had such knowledge they would be affected by being present and failing to give notice.

2. Evidence which is irrelevant to the issue, should not be admitted over objection.

3. When the court below has granted a new trial, and the main ques-

·tions in the case call for a more thorough and exhaustive examination of the authorities than has taken place in the argument before the supreme court, a reversal would be improper. It is best to leave the case where it is, that further research and study may be brought to bear on the final result.

Charge of Court. Infants. Evidence. New trial. Before Judge HALL. Monroe Superior Court. February Adjourned Term, 1876.

On January 6th, 1862, Coleman G. Goodwyn died testate, leaving a widow and five children, to wit: John C. Goodwyn, Amanda P. Talmadge, Mary A. Goodwyn, now Ferguson, Tullia P. Goodwyn, now Findley, and Puss C. Goodwyn, now Freeman. By the fifth item of his will, he devised, in substance, as follows:

When all his children have become of age, or married, he gives the land on the other side of Todd's creek, in equal parts, to his daughters Tullia P., Amanda P., and Mary A., during life, and at their death to their children severally; if either should die without children, then to their survivors. If Mary A. and Tullia P. both die without children, then one half to Amanda P., and the other half to John C. and Puss C. When all of his children have become of age, or married, he gives the land on this side of Todd's creek to John C. and Puss C., or to his wife if she be then unmarried and in life. At the death of John C. or Puss C. without children, to the survivor or representatives, at the death of his wife; and if children be left, then to be divided between them *per stirpes.* The land upon this side of the creek he desires to be cultivated by his wife for the support and maintenance of herself, John C. and Puss C. after the division contemplated under this item, and wishes that his wife should keep a distinct account of the proceeds over and above a support, such surplus to be equally divided between John C. and Puss C., under the limitations upon which the land is devised.

This will was executed on January 4th, 1859. The widow

qualified as executrix, and so continued to act until July 2d, 1867, when she died, and Bernier Pye was appointed the administrator *cum testamento annexo.*

On September 5th, 1867, Pye, as administrator, Ferguson and his wife Mary A., Amanda P. Talmadge, and said Pye as guardian *ad litem* for Tullia P., John C., and Puss C. Goodwyn, filed what purports to be a bill, in Monroe superior court, in which, for various causes therein stated, they prayed the chancellor to grant to them a decree directing the sale of the lands of the testator. No *subpœna* was prayed.

The chancellor passed an order appointing Pye as guardian *ad litem* for the minor children of the testator, to-wit: John C., Tullia P., and Puss C. Goodwyn.

On September 6th, 1867, the bill or petition was submitted to a jury, who returned a verdict, in substance, as follows:

We find that the lands belonging to the estate of Coleman G. Goodwyn, deceased, be sold by the administrator, the proceeds of that lying beyond Todd's creek to be equally divided between Amanda P. Talmadge, Tullia P. Goodwyn and Mary A. Ferguson ; the proceeds of that on this side to be divided between John C. and Puss C.

We find that the shares of the minor children, to-wit: Tullia P., Puss C. and John C., remain in the hands of the administrator until a guardian can be appointed by the court of ordinary. That the distributive share of each legatee of full age be paid to her, subject to the limitations and restrictions declared in the last will and testament, etc.

On the same day the chancellor decreed in accordance with the verdict.

On October 15, following, Pye, as administrator, advertised the land to be sold on the first Tuesday in the November following.

In accordance with this advertisement, the lands were sold. Tullia P. and Puss C. Goodwyn were then respectively thirteen and eleven years of age. On the day of sale

they were on a veranda fronting the public square where the land was sold, with their sisters, Mrs. Talmadge and Mrs. Ferguson.

This case arose upon a bill filed by Tullia P. Findley, formerly Goodwyn, and Puss C. Freeman, formerly Goodwyn, in which they attacked the decree obtained by Pye, administrator, *et. al.*, authorizing the sale of the lands, upon the ground that they were minors, and not properly represented in the proceeding upon which such decree was obtained. They alleged, also, that the sale was void, because the lands were not advertised as required by law. They prayed as follows: the appointment of a commissioner to sell the lands, and to pay to Tullia P. one-third of the proceeds of those beyond Todd's creek, and to Puss C. one-half of the proceeds of those on this side, they offering to account for the money arising from the former sale which was appropriated to their use; also, an account for the rents.

To this bill the purchasers of such lands were all made parties defendant. The pleas and answers set up the validity of the decree under which the sale was made, insisting that the complainants were properly represented by a duly appointed guardian *ad litem;* that they were present at the sale under the aforesaid decree, knew what was going on, and did not object thereto; that they ratified the sale by the receipt, through their regularly appointed guardian, of their proportion of the proceeds thereof, all of which was appropriated to their use.

The jury found for the defendants. The complainants moved for a new trial upon the following, among other grounds:

1st. Because the verdict was contrary to evidence and the principles of justice and equity.

2d. Because the court erred in permitting Pye to testify as to what Mrs. Goodwyn (the widow of the testator) said to him on her death-bed about taking letters of administration on the estate of her husband after her death.

3d. Because the court erred in permitting said Pye to

testify that Mrs. Talmadge and Mrs. Ferguson requested him to administer, and that the former urged the sale of the lands.

4th. Because the court erred in charging as follows : " If complainants were of sufficient age at the time of the sale to know their interests—to know that they were entitled to the lands under their father's will—and knew they could not be sold under the will until all the children arrived at age or married, and if they knew that the decree under which the administrator sold was invalid as to them, and so knowing they stood by and knew that defendants, or those from whom they bought, were bidding for the land, and did not give notice of the invalidity of the decree as to them, then they would be estopped from now setting up the invalidity of the decree."

The motion was sustained and a new trial ordered ; whereupon defendants excepted.

Bernier Pye having died after writ of error issued, Cyrus H. Sharp, his administrator, was made a party in this court in his stead.

A. D. HAMMOND ; SPEER & STEWART ; JAMES S. PINCKARD, for plaintiffs in error.

BECK & BECKS ; LANIER & ANDERSON, for defendants.

BLECKLEY, Judge.

The court granted a new trial. The general question for our decision is, whether there was an abuse of discretion in so doing. We need not examine all the grounds embraced in the motion. The case is so emphatically a complication, that the court was quite justifiable in overhauling it by another trial. There was certainly error in the charge, so far as it recognized the possibility of estoppel upon the minors by the knowledge of their rights, with presence at or near the place of sale, and failure to make known their objections. There was no evidence that they knew their rights. *We* do

not know them now, after hearing all the argument made by the learned counsel upon them. Besides, had their knowledge been ever so perfect, all they were bound to communicate, on seeing their property about to be sold, was that it was their property under their father's will. 9 *Ga.*, 23. And this was already known. The purchasers knew it, for the sale was made under a decree which referred to the will and recognized their interest. If the minors had made the sale themselves, or expressly assented to it, and if the consideration had moved directly to them, they would not have been estopped to reclaim the land, on refunding to the purchasers the money received ; for it cannot be said to be an act of legal fraud for an infant to repudiate an agreement which, because of infancy, is not binding. 19 *Ga.*, 22.

Of course, if the sale was valid, apart from the consent or acquiescence of the minors, their failure to forbid it, with knowledge of their rights, would have nothing to do with the matter, and charging upon the subject at all was error. The jury may have found their verdict upon that charge, so that the real case may never have been tried. We think it was error, moreover, to admit evidence of the wishes of the deceased executrix, and of other members of the family, as to who should succeed her in the administration, such evidence being irrelevant. Also, that it was error of the same kind to admit evidence that the adult sister of the minors, who subsequently became their guardian, urged a sale of the lands. She was one of the parties that joined in the application for the sale, and that being so, whether she urged the sale was of no consequence, though she afterwards became guardian. These errors as to evidence, were of no real importance, and we rule on them that they may not incumber the case hereafter. The real case lies in the two questions: Was the decree of sale void? and if so, inasmuch as a regular guardian of the minors received under it all the proceeds to which her wards would have been entitled if the decree had been valid, can the wards recover the land without refunding as much money as went into their guard

ian's hands, or can they recover by refunding so much only as came from their guardian to them, or was expended by her for their benefit? As there is to be another trial, we shall not attempt a decision of these questions.

Upon the argument which we have heard, we are not prepared to take the case out of the hands of Judge Hall, and prevent him from trying it over. We doubt not that a thorough sifting of the authorities is needed, and none such has taken place in our presence. Was the decree void or valid? To answer this, it must be determined whether it is in the power of a court of chancery to decree a sale of realty, where the legal title is in an infant. What was the common law? Has that law been changed by statute in Georgia? If no direct change, has there been an indirect or consequential change resulting from putting personalty and realty upon the same footing as to distribution, etc.? What is the effect of investing the ordinary with power to order the sale of lands belonging to infant wards? Is that power exclusive where the infant has a regular guardian, and does it exist at all where there is no regular guardian? Is the jurisdiction improper for the ordinary and proper for chancery, because the infant has not a clear, uncontingent title, but a title affected by the chances of survivorship, etc., and because there is a contingent remainder to unborn children? How is the power of chancery affected by the object for which the sale is ordered, whether for maintenance or change of investment? Can the decree now in question be rested on the power of chancery to interfere in the *administration* of estates? Some of the sources of light as to the power of chancery over the estates of infants are 2 Story's Eq., § 1357; 2 White & Tudor's Leading Cases in Equity, part 2d, p. 171; 1 American L. C., 267; Tyler on Infancy, 296; 1 Fonb. Eq., 88; Daniel's Ch. Pr., "Infants" in the index; 3 Desaus., 18, 22; 6 Hill, 415; 9 Dana, 526.

If it should be ascertained that a court of equity in Georgia has power to convert an infant's realty into personalty, either for maintenance or for the advantage of bettering the

investment, or for both purposes conjointly, then, was the power brought to bear by the means adopted in the instance before us? We could hold with certainty, that no bill was filed, because no subpœna was prayed for or issued. In equity practice, a bill without any defendant would be an anomaly. And only those persons are defendants against whom subpœna is prayed: Code, §4175; 5 *Ga.*, 251. The so-called decree was rendered upon petition only. All the parties to it were on the same side. Two questions arise on this branch of the case: Could the court possess itself of the parties and the subject matter by petition? and, if so, was the appointment of the administrator as guardian *ad litem* for the infants void, so as, in fact, to leave them unrepresented in the application? As to what may be done on petition, see Code, §§3100, 4221; 3 Bro. C. C. 88, 500; 2 Eden, 148. As to who is a ward of chancery, see 2 Story's Eq., §1352. It would seem from the authorities that there is no substantial difference between a *prochein ami* and a guardian *ad litem*. The former denomination is usually applied when the representation is for an infant plaintiff, and the latter when it is for an infant defendant. But in either case, the representative of the infant is regarded as an officer of court: Story's Eq. Pl., §§57, 58, *note* 2; 1 Am. L. C., 263 to 267; 7 M. & W., 400; 13 *Ib.*, 640. In 2 Edw. Ch. R., 113, one who was both a joint owner of the property and a creditor of the infant was allowed to act, he being a person of excellent character. Is there any real incompatibility between the office of administrator and that of guardian for the legatees or devisees? When the court appointed the administrator guardian *ad litem* for the minors, was he not thereby commissioned as guardian for the conduct of that proceeding, and did he not thenceforth act in the double character of party and officer of the court? Doubtless it was an improper, an injudicious appointment, but was it therefore void? It is desirable that further light be thrown on all these questions by the production of au-

thority, if authority can be found. Should it be held that
the decree was void, the inquiry whether the minors must
refund all the purchase money received under it by their
guardian, or so much only as they have enjoyed the use of,
will rise into importance. We know of no direct authority
upon the point. Perhaps 9 Dana, 526, would tend to illus-
trate it; and 46 *Ga.*, 101, bears upon it. We may add that
we do not see how any aid to the decree can be drawn from
the act of 1865–6, embraced in section 4241 of the Code.
That act seems not to enlarge the jurisdiction of equity.
Neither does it appear to authorize more to be done by peti-
tion than formerly. It relates only to rendering decrees,
and is silent as to what steps are to be taken for instituting
proceedings, and preparing the case for decree. Then, as
to the matter of the decree, it must be necessary and *legal.*
No new relief is provided for. What could be decreed in
term may be decreed at chambers, on the conditions speci-
fied in the act; but there is no attempt to confer larger
powers to be exercised at chambers than could, without the
act, be exercised in term time. Finally, we may suggest
what has occurred to us in reference to the danger, in the
present state of the record, of a decree on the present bill
not being obligatory on the infants, if indeed they are still
infants. Their guardian no longer represents them, she
having been made by amendment a party defendant. There
is a very loose appointment of a next friend on the terms
of giving bond; whether the terms were complied with, or
the appointment accepted, does not appear. Then, by a last
amendment, the husbands of the infants are made parties
complainants in their character of husbands. Marriage
formerly determined guardianship over females, for their
fortunes passed to their husbands: 13 *Ga.*, 467. But the
law now being that women retain all their rights of prop-
erty when they enter coverture, it is questionable whether
a husband is any substitute for a guardian *ad litem* or *pro-
chein ami.* If this litigation should reach a final decree, it

would. be deplorable if, for the want of competent parties, no actual progress should have been made.

Cited for plaintiffs in error : 53 *Ga.*, 514 ; 13 *Ib.*, 24, 467, 473 ; 11 *Ib.*, 658 ; 14 *Ib.*, 539 ; 29 *Ib.*, 219 ; 37 *Ib..* 257; 31 *Ib.*, 601 ; 28 *Ib.*, 353 ; 27 *Ib.*, 167; 24 *Ib.*, 434 ; 14 *Ib.*, 323 ; 13 *Ib.*, 1 ; 11 *Ib.*, 294, 423.   For defendants in error : 1 Daniel's Ch. Pr., 204 *note*, 206, 216, *note ;* Code, §1821 ; 48 *Ga.*, 648 ; 13 *Ga.*, 24, 467, 478 ;   acts 1865–6, p. 221.

Judgment affirmed.