## Lampton *vs* Usher's Heirs.                    CHANCERY.

### APPEAL FROM THE CHRISTIAN CIRCUIT.

*Vendor and vendee.    Infants' real estate.    Jurisdiction.*    Case 18.

JUDGE BRECK delivered the opinion of the Court.    *September 24.*

DAVID USHER died intestate in the county of Christian, leaving a widow and eight children.

At the May term, 1837, of the Christian Circuit Court, seven of the children, with the husbands of several of them who were *femes covert*, exhibited their bill, alledging that their ancestor left a valuable landed estate, consisting of several tracts; that what was called the homestead was large and valuable, and could not be divided without greatly impairing its value, and that it would be for the interest of all parties concerned, to sell that tract and out of the proceeds to provide for the widow, who was willing to receive an adequate compensation in money, in lieu of her dower in the real estate, which had not been allotted to her; that as some of the heirs were infants, there could be no valid allotment and division of the estate without the aid of the Chancellor. They prayed for a sale of *the homestead*, an allotment in money to the widow out of the proceeds, and an equitable division and distribution of the residue, and also of the other estate, among all the heirs, taking into consideration advancements which had been made to a part of them by their ancestor, in his life time. Two of the complainants, Baxter E. Usher and Newton B. Usher, were infants, and petitioned by their brother and next friend, James H. Usher.

The widow and James Y. Barnett and wife, the latter being one of the children of David Usher, were made defendants. The widow expressed a willingness, in her answer, to a sale of the home tract, and to receive out of

Case stated.

the proceeds, during her life, three thousand dollars, in lieu of her dower in the entire landed estate of her deceased husband.

Barnett and wife also answered, consenting to the sale, and in effect uniting in the prayer of the bill.

The Court decreed a sale of the home tract and three thousand dollars of the proceeds to the widow during life, in lieu of her dower, and a distribution and division among the heirs, of the residue, and of the other estate.

Commissioners were appointed to carry the decree into effect, who, at the August term of the Court, 1839, made a very full and explicit report of their proceedings. They reported a sale of the home tract at public auction, and that James J. Lampton had become the purchaser and executed bonds for the purchase money, according to the decree. They reported, also, a deed of conveyance to him on behalf of the heirs, and a settlement and division of the whole estate, but varying somewhat from the mode directed by the decree, in virtue of a written agreement, which had been entered into by the heirs, and which was also reported. The report, settlement and partition made by the Commissioners, were by consent of parties, approved and confirmed, and at the same time made the final decree of the Court. The deed to Lampton was also duly acknowledged and certified to the County Court for record. The sale was on a credit of one, two and three years, and bond and surety given by the purchaser to the Commissioners, for the use of the widow and heirs. Lampton obtained possession of the purchased premises in the fall of 1839. He subsequently paid a portion of the purchase money and executed his note for about $2,000, to the widow, on account of the portion thereof decreed to her.

In 1843, judgments having been obtained against him for the residue, and also for the amount which he had assumed to the widow, he exhibited his bill against the widow and heirs and Commissioners, seeking to avoid his purchase upon the ground that the proceedings and decree, under which the sale was made, were null and void, the Court having no jurisdiction to direct it; that part of the heirs were *femes covert,* and two of them infants, one

of whom, Newton B. Usher, was also an idiot. He insists that he obtained no title whatever by his purchase, but if he did, he tenders a release thereof. He prays that the sale may be set aside and held for naught, and the purchase money paid by him refunded, and an injunction, which was awarded him, restraining the collection of the residue. Other defects and irregularities in the proceedings by the heirs, are suggested and relied on, but which need not be here noticed.

The heirs answer, resist the relief sought, and insist upon the validity of the sale. They deny that the defendant, Newton, is an idiot. They further rely upon a deed of confirmation made to the complaniant before the exhibition of his bill, by the widow and all the heirs, except Baxter, one of the infants, who had died intestate and without issue, and whose interest had passed to the other heirs. That when this deed was made, which was in December, 1842, Newton was of age and competent to make it. They further rely and show, that when the heirs exhibited their petition for a sale, Francis Usher, one of the complainants, was the statutory guardian of Baxter, and James Y. Barnett, a defendant to the petition, of Newton B. Usher. That they both united in the prayer for a sale, and consented to the final decree confirming it. All the heirs, in their answers, again confirm the sale, and pray that it may be sustained, and tender the deed of confirmation.

The Circuit Judge perpetuated the complainant's injunction as to $1,500, being the amount of payments made by him and for which credit had not been given, and dissolved it as to the residue, with damages; and from that decree the complainant has appealed to this Court.

In the revision of the case, we will first dispose of the objections, based upon the alledged infancy and idiocy of the defendant, Newton B. Usher.

There is some confliction in the testimony in regard to the time when he became of age, but we have had little difficulty in coming to the conclusion that he was not twenty one at the date of the deed of confirmation, as it is termed. But the testimoney is satisfactory and con-

LAMPTON
*vs*
USHER'S HEIRS.

The answer of Usher's heirs resisting the rescission, and tendering a deed confirming the conveyance by commissioners.

Decree of the Circuit Court.

Circumstances
from which ca-
pacity to consent
to a judicial sale
to convey, is in-
fered by the
Court.

Where there
was no objec-
tion by a vendee
to the title of the
vendors, no alle-
gation of fraud
in the sale, pos-
session received
and enjoyed by
the vendee up to
the filing of his
bill to rescind,
and ability is
shown to make
a good title at
the filing of the
vendor's answer,

clusive that he had attained that age when he filed his answer to Lampton's bill.

Upon the question as to his mental capacity, we have had more difficulty. He seems, from his birth, to have been a good deal deformed in his person and deficient in his hearing. His deformity and deafness, rather than want of capacity, have had the effect, in the estimation of those who have best known him, to give him an awkward, vacant, and rather idiotic appearance. But testing his capacity by facts, which are the correct criterion, rather than appearances, we think he cannot be regarded as an idiot. It appears that he can read and write, and signed his name to the deed of confirmation, and when advised of the design of the complainant to set aside the sale, he immediately expressed his opposition. It also appears that he went into the County Court and chose his guardian, and that he is an orderly member of a christian church. These and various other facts in regard to him, indicating docility and intelligence, appear in the record, and in our opinion, furnish sufficient evidence that he was competent to consent to and confirm the sale to the complainant. Although from habit, education and difficulty in hearing, he might be deemed incompetent to transact business of importance, yet we are satisfied he had sufficient capacity and intelligence to comprehend, when explained, the nature of the controversy with the complainant, and to elect whether he would or not, sanction the sale. His alledged incapacity, in our opinion, constituted no ground for vacating, nor obstacle to the confirmation of the sale, if irregular and defective.

But it is contended that the sale was not only irregular, but void, and not susceptible of confirmation. In the examination of this question, it may be premised, that there is neither allegation nor proof of any defect in the title of the heirs to all the land purchased by the complainant, nor is it pretended that there was any misrepresentation, or concealment or fraud practised by them in any way, in regard to the sale. The sale on all sides was unquestionably a fair one, and the purchase by Lampton made in good faith. The object of the proceeding by the heirs, was to effect a speedy and equitable settlement

and division of the entire estate of their ancestor, and by means of a decree to carry out an agreed arrangement between all the parties interested.

No objection to the title appears to have been made by the complainant till near four years after he purchased and obtained the possession, when he was pressed for the purchase money, and the land had declined in value.

Apart from the mere naked question of title, there is no ground whatever for setting aside the sale; and as the heirs have manifested every disposition to perfect the title, if defective, and which they unquestionably had the ability to do when they filed their answers in this case, it is very clear, we think, the sale should be sustained, unless void and not susceptible of confirmation.

That the proceedings and decree, under which the sale was made, were irregular and erroneous, in view of any statutory provision authorizing a decretal sale of the real estate of heirs, is obvious. The act of 1796, only authorizes a sale when the interest of each heir does not exceed thirty pounds. Such is not alledged in this case to be the fact, and the sale shows the interest of each heir to exceed ten times that sum.

The act of 1813 authorizes a sale, upon the petition of the guardian, of the real estate of infants, the title to which is derived by descent, and where the estate is held jointly with other heirs, it authorizes, by their consent, a sale of the entire estate. It is also provided by that act, that affidavit shall be made by the guardian to the petition, that the Court shall appoint commissioners to ascertain and report the value of the estate of the infant or infants, and before a sale shall be decreed, that bond shall be executed by the guardian.

In this case the estate was held by descent, and part of the heirs were infants; but the petition for a sale was not by their guardian, certainly not directly, but by *prochien ami;* there was no affidavit to the petition, nor commissioners appointed, and no bond executed as required by the act. As we have seen, however, the infants had at the time statutory guardians, who were parties to the proceeding, and who united in the petition for a sale, al-

and a desire to confirm the sale and make good the title, the Court refused to rescind, though the purchase was made under a decretal sale which was irregular and erroneous under the statutes authorizing sales of infants real estate.

Though a petition for a sale of infants real estate held by descent be by a *prochien ami*, without affidavit to the petition, and without any commr's. or appraisement, and without the execution of the

LAMPTON
*vs*
USHER'S HEIRS.

bond specified in the statute, yet if the statutory guardian be a party to the suit, unites in the petition for sale, the court has jurisdiction to decree a sale of the sale, (9 *Dana,* 526; 3 *B. Mon.* 167,) and these irregularities present no obstacle to a confirmation of the sale by the heir when of full age, and the sale within the power of the Court.

though the fact of their being guardians does not appear in the record of the petition case.

The question arises, whether, in view of this state of fact, the Court had jurisdiction to decree a sale of the land. That the Court had jurisdiction, so far as the bill sought a settlement and division of the estate, there can be no doubt. But having jurisdiction of the case for that purpose, would, we apprehend, confer no authority upon the Court to direct a sale of the land, nor in fact any validity whatever to such sale. If the Court would have had no jurisdiction without a prayer for the settlement and division of the estate, it would have had no more with it. Are the proceedings void then under the statute? It has been decided by this Court, that the failure of the guardian to make the affidavit to the petition, and to execute bond before the sale, would not be fatal to the jurisdiction, and render the sale void, nor would the omission of the Court to appoint commissioners to ascertain and report the value of the infant's estate.

In *McKee's heirs* vs *Hann, &c.*, (9 *Dana,* 526,) no bond was executed before the sale, yet the sale was sustained. The Court, in effect, decide that the execution of the bond was not essential to give the Court jurisdiction. That the sale would be valid provided a bond was subsequently executed. In the same case it was held that the report of commissioners appointed to ascertain the value of the infant's estate, not being in strict conformity to the act, would not affect the sale.

In *Gates* vs *Kennedy*, (3 *B. Monroe*, 167,) the Court not only recognise the principles settled in *McKee's heirs* vs *Hann, &c.*, in regard to the failure to execute bond, and the defect in the order appointing commissioners, and in their report, but the Court in that case go further, and decide that the want of an affidavit constituted no obstacle to the confirmation of the sale by the heir after he had become of age, and while the sale was incomplete and within the power of the Court. This case virtually decides the affidavit not essential to give the Court jurisdiction.

But in *Vowles' heirs* vs *Buckman*, (6 *Dana*, 466,) and which is relied upon by the counsel for the appellant as

conclusive upon the question of jurisdiction, the infants petitioned, as in this case, by their next friend, and there was no affidavit nor bond, as required by the statute. The Court decided that the sale was unauthorized and void, and consequently that no title passed to the purchaser. But the Court say in that case, that "there was no such petition or affidavit by the guardian, as required by the statute, nor any act on his part, equivalent to an application by him, or evincing even his concurrence in the application." Nor did it appear that the infants had any guardian at the time of exhibiting their petition.

In the case under consideration, the infants had duly appointed statutory guardians, and as we have seen, both united in the petition for a sale, although not expressly in their character as guardians.

So far as the petition or bill sought a settlement and partition of the estate, the infants might sue, as they did, by their next friend. As to the sale of the land, we think in a Court of Equity, in view of all the facts, the guardians should be regarded not only as assenting as guardians, to the sale, but as petitioning for it, although the record in the suit of the heirs furnished no evidence that Francis Usher and Barnett, were the guardians of the infants, yet that fact, we apprehend, may be established as it is, by proof *dehors* the record.

In the case of *Singleton* vs *Coger*, (7 *Dana*, 479,) the purchaser was permitted to show, and thereby sustain the sale, that the land was held by descent by the infant, a fact not appearing in the record of the petition and sale, and which on that account had been reversed by the heir. Suppose the next friend of the infants in the petition of Uusher's heirs, a case put by the Court in *Singleton* vs *Coger*, had been in point of fact their guardian, it would clearly have been competent for the purchaser or the infants to prove it, and when proved, the effect would be the same as if the record had shown it.

But this case differs from *Vowles' heirs and Buckman*, in another important particular. In this case, the sale was made on the 8th of August, and on the 19th of the same month the commissioners made their report, and as

When infants petition by *prochien ami*, for the sale of real estate, and make the statutory guardian of others defendants, and they unite in the prayer for a sale, they will be considered as acting as guardians, and as petitioning for it, and the fact of guard'ship may be shown by proof *dehors* the record.

part thereof, they reported a deed to the purchaser, da-
ted on the day of sale.   The report at the same term of
the Court, and while the sale was incomplete, and with-
in the control of the Court, was by consent of all par-
ties, infants as well as adults, confirmed.   There appears
to have been no such consent or confirmation in *Vowles'
heirs and Buckman.*

We can hardly doubt that such an express recognition
of the sale and conveyance to the purchaser, at least by
the adult heirs, and who were not *femes covert,* would be
binding upon them ; and as the deed contained a clause
of general warranty, if the title proved defective, that
they would have a right, in support of their covenant, to
cure the defect.   It is true the complainant alledges that
he did not accept the Commissioners deed, but it does
not appear, nor does he alledge, that he made any objec-
tion to it, till he exhibited his bill, nor does he pretend
ignorance of its existence from the day of its date.   He
ratified his purchase and virtually accepted the deed by,
shortly after its date, acknowledgment and confirmation,
taking possession of the land, and which, without com-
plaint or objection, he continued to cultivate, improve
and enjoy, till the commencement of this suit.   In fur-
ther confirmation of his purchase, he paid, from time to
time, portions of the purchase money, and voluntarily
assumed to pay the widow, on account of her dower, a
large sum, for which he obtained credit upon his bonds
to the Commissioners.

Again ; *Vowles' heirs* vs *Buckman* was an ejectment
by the heirs against the purchaser, and the naked legal
question of title was presented, and decided alone upon
the record of the petition and proceedings by the heirs,
which showed that the sale was made upon the petition
of infant heirs, by their next friend, without the assent
or even existance of a guardian.

In this case the *purchaser* appeals to the Chancellor to
be relieved from his purchase, upon the ground that he
acquired thereby, if any, but a defective title.   But he
evinces no disposition to carry out the contract, manifest-
ly made in good faith, even if his title can be made per-
fect, as it was intended and supposed to be, and as the

A purchaser at a
sale of infants
real estate made
under a decretal
sale, to whom a
conveyance was
made and report-
ed to Court, and

heirs are now desirous, and undoubtedly able to render it. In the former case, if it were a doubtful question whether the purchaser had obtained the title of the infants, the Court would not be inclined to sustain it. But in this case, as the purchaser is already, and has been for years, in the undisturbed possession of the land, and the heirs are desirous and able to clear his title of doubt and render it perfect, the Chancellor might well refuse, upon a doubtful question as to the character of the sale, whether void or voidable, to vacate it. We cannot, therefore, regard *Vowles' heirs* vs *Buckman* as conclusive of the case under consideration, but upon the whole, we are of opinion the complainant has failed to manifest his right to be relieved from his purchase. The sale, we think, ought to be sustained:

LAMPTON
*vs*
USHER's HEIRS.

the sale and deed received and confirmed, *by consent*, and who took possession under the purchase and held and improved the estate and paid part of the price, will be regarded as having accepted the deed.

1st. Upon the ground that the guardians of the infants were, in point of fact, parties to the petition and proceedings under which the sale was made, and may properly be regarded as such, not only as assenting, but as applicants for it. If correct in this position, the sale, although irregular and erroneous, was not void but voidable, and, therefore, susceptible of confirmation.

2d. We are inclined to regard the recognition of the sale and conveyance to the complainant, and the consent to the final confirmation thereof by the decree, as binding, at least upon all the parties except the infants and *femes covert*, and the subsequent acts of the complainant as equivalent to a ratification of his purchase and acceptance of the deed; and although the title of the infants and female heirs, in this view of the case, may not have passed by the deed, yet as it contained a covenant of warranty, binding upon the other parties, they would have a right to procure the defect in the title as to the residue of the parties to be cured. This was done by the subsequent deed, which was sufficient to pass the entire title, except as to the defendant, Newton, who was, in our construction of the testimony, at the time an infant. That deed is not noticed by the complainant, but it appears to have been lodged in the office of the County Court Clerk and recorded, and the defendants aver, in their an-

swer, that the complainant was duly notified thereof, but of this there is no proof.

In order to vest a perfect title in complainant, however, the confirmation of this deed by the defendant, Newton, after he became of age, which was not till after the exhibition of complainant's bill, was necessary. He, with all the other parties, by their answer, confirm the sale, and also this deed which they exhibit and tender to the complainant.

In regard to the 88 acres of timbered land, sold as appurtenant to the home tract, we think it was properly considered as part thereof, and that the title thereto, as well as to the residue, vests in the complainant.

Finally, we perceive no error in the decree, except in awarding damages upon so much of the judgments enjoined, as to which the injunction was dissolved, and in that respect it is erroneous. The complainant had a right to have the sale confirmed and his title perfected before required to pay the purchase money.

Wherefore, for the error indicated, the decree is reversed and the cause remanded for further decree in conformity herewith.

*Morehead & Reed and Cates & Lindsey* for appellant; *B. & A. Monroe and Harlan & Craddock* for appellees.

*Where a bill is filed by vendee to perfect his title under his purchase, before the title is made or tendered, and an injunction to restrain the collection of the purchase money, and the title is made complete before the hearing, the dissolution of the injunction should be without damages.*