Chief Justice Marshall
delivered the opinion of the Court.
This action of detinue was brought by Duckett and wife' for the recovery of a female slave, Mary, and her children, in possession of Crider, who had purchased and received the mother about nine years before from one Wyatt, who had purchased her from J. J. Satterfield, who had early in the year 1835 purchased her from Gray, her owner, but had taken the bill of sale to his niece, Eliza Satterfield, now E. Duckett, and one of the plaintiffs. A trial was had upon the plea of non detinet, and a verdict having been found for the defendant under instructions moved for by him, and which, *189 being admitted to be erroneous, need not be stated, the judgment against the plaintiffs must be reversed, unless upon the case as presented by the pleadings and evidence, the jury were bound, without any instructions, to find for the defendant, or the Court might have instructed them to find for him, or as in case of a non-suit.
It appears that Eliza Satterfield was about eighteen-years of age, when the bill of sale was made to her, and was then at the house of her uncle, J. J. Satterfield, under some agreement made between him and her father, residing in a distant county, to the effect that if the latter would permit her to go and reside with her uncle, and also give up to him his notes for $70, he would buy a negro girl for her- — that the notes were given up, and she was taken home by her uncle, where she remained some few months, when falling-sick, she was taken by her father to his own home, where she remained about two years, until her marriage under the age of twenty-one, with Duckett, and never returned to live with J. J. Satterfield, who had and retained possession of the slave until 1839, when he sold and delivered her to Wyatt, who in 1840, sold and delivered her to Crider, in whose possession she remained up to the commencement of the suit in 184-9, having in the interval given birth to the children claimed in the declaration. It does not appear that Eliza Satterfield knew while she was at her uncle’s, that the' bill of sale had been made to her, or that she ever had possession or control of the slave, unless as implied from the possession of her uncle, nor was it known in the neighborhood that she had, or made any claim until about the time this action was commenced. But the slave was considered and recognized as the properly of J. J. Satterfield, who exercised ownership over her from the date of his purchase until he sold her to Wyatt. The manner and time of the delivery of the bill of sale by J. J. Satterfield, and of its coming to the possession of the plaintiffs, though stated by the father of *190 Eliza Satterfield, is rendered uncertain by bis conflicting declaration proved by another witness, which raised a question of credibility proper for the decision of the jury. And as there seem to have been subsequent transactions between J. J. Satterfield and the father of the plaintiff, Eliza, in which the $70 surrendered may have been settled, it might have been a question whether the consideration on which the bill of sale had been taken to E. Satterfield, having partially failed, was not in fact wholly reimbursed. The long silence of the present claimants, and their acquiescence for fourteen years in the possession and sale of the slave by J. J Satterfield and the subsequent vendees, is well calculated to raise inferences unfavorable to their title, and especially if, as their witness states, the bill of sale had been delivered to him when he took his daughter home, and was upon her marriage delivered to her husband.
In'a suit by husband and wife, the declaration & proof should show a right to maintain a joint action.
But whatever inferences might be drawn from these facts, they are not established by the verdict, and cannot be assumed by the Court as a ground for sustaining the judgment. Nor can it be assumed, if the jury could have found that the possession of J. J. Satterfield was not adverse, but amicable and subordinate to the title of Eliza Satterfield at the time of her marriage in 1837, and up to his sale to Wyatt in 1839. If it was thus amicable and subordinate at the time of the marriage, then the consequence would be that the title vested absolutely in the husband on the marriage, and that the right of action being in him alone, was not only barred by lapse of time, but there could be no recovery in this joint action by himself and wife, and that the verdict and judgment being on this ground right, and in fact necessarily for the defendant, there could be no reversal. In the case supposed, the absolute property would have vested in the husband long before the date of the act of February, 1846, preserving the rights of married women in their slaves, and was not divested by that act, though it should be regarded as authorizing *191 a joint action by husband and wife in consequence of the permanent right of property in her, and of her right in case of her surviving him. But even in a case coming under this operation of the act, and especially where, as in this case, the declaration avers a joint possession, which in law is the possession of the husband, the declaration should show on its face the right of the wife, as being the only ground on which she could be united in the action. And as this declaration does not allege, nor profess to show any right in her, or any ground for uniting her in the action, unless the insufficient fact of a joint bailment in the first count, and a joint possession in the second, be intended for that purpose, there could have been no recovery in this action, without an amendment of the declaration.
One disability cannot be added to another to save a right of action for slaves whether it be a succession of disabilities in the same person, or in a succession of persons: (Cro zer vs Gano and Wife, 1 Bibb, 259-60, overruled.)
It is only by assuming that the possession of J. J. Satterfield was adverse to the title of Eliza Satterfield before and at the time of her marriage, and that her right being but a chose in action did not vest absolutely in her husband by the marriage, nor until reduced to possession by him, that there can be any plausible ground for maintaining that the right of property if it existed in her at the time of her marriage still remains so as to authorize a suit for iis recovery in the name of herself and husband. And as more than twice five years had elapsed from the time of her marriage, and also from her arrival at full age, before the commencement of this action, her right has long since been barred by the lapse of five years since she came to full age, unless, as the disability of coverture occurred before that of infancy was removed, the one can be added to the other so as to preserve her right under the saving clause of the statute, notwithstanding the lapse of more than the statutory period for barring her action after the removal of the disability of infancy. The important question whether in a personal action successive disabilities can thus be added with the necessary effect .of prolonging indefinitely the saving in favor of persons under disability, and of postponing indefinitely the ap *192 plication of the statutory bar, has not so far as we know, been heretofore directly presented, for decision in this Court. The case of Crozier vs Gano wife, (1 Bibb, 259-60,) has been referred to as a decision directly in favor of lapping successive disabilities of the same person, as by infancy, coverture, &c., so as to save the right to maintain an action of detinue, though the limitation of live years after the termination of the first disability (of infancy,) had elapsed long before the action was commenced. But although the Court in that case expresses a very decided opinion that successive disabilities occurring, each succeeding one before the preceding one was remoyed, would save the right from the bar, yet as the replication to the plea of the statute of limitations in that case did not show that the Risibilities relied on had thus occurred without an interval between them, it did not necessarily present the gestión whether such lapping disabilities might be relied-on for suspending the bar of the statute. However (fiat question might be decided, the replication was insufficient.
Still as the Court said that the replication would have been good if it had presented a succession of disabilities without interval, and decided it to be bad, because it did not present such a state of facts, the case is entitled to great consideration in determining the question. Upon this point however, it has stood for more than forty years a solitary case, which so far as we can ascertain has not been followed nor recognized, nor yet directly overruled, -it seems however to be inconsistent with the construction of another branch of the same statute of limitations (of 1796,) as settled by several cases which decide, that the right of entry on land . and the right of action in ejectment cannot be saved by adding successive disabilities, but that the statute begins to nm upon the removal of. the first disability, and ■bar's the right if the entry is not made, or the action is not commenced within the limited period after that time; Floyd’s Heirs vs Johnson, (2 Littell, 114,) Souths *193 Heirs vs Thomas's Heirs, (7 B. Mon. 59.) If the construction were different, a right to land might after laying dormant for fifty or seventy or even a hundred or more years, be asserted with success, but in evident violation of that repose which it was the object and policy of the statute to secure. And when we consider the mutations which take place in personal property, the precariousness and perishable nature of many species of it, the great increase likely to take place in the number and value of slaves in the course of years, and the probability of their being in the ordinary course of things dispersed by descent or purchase among numerous owners and in distant places, there seems to be no less if not greater reason for restricting the right of action to a definite and short period and for limiting exceptions to this restriction, in the case of such erty, than in the case of land. Indeed the sense of convenience and propriety is exhibited i fact that in our statute of limitations of 1796, a¡ we presume in the statutes of most other countri right of action for movable, property is limited much shorter period than the right of action for And there can be no more reason for extending by construction the saving in favor of persons under disability who have right to personal property or slaves, than of those who have right to land. Indeed, there would be an apparent inconsistency in enacting or in deciding that the right to land should only be saved during the continuance of one disability, but the right to personal property or slaves might be preserved for an indefinite period by the continued occurrence of successive disabilities without interval between them. And if the successive disabilities of the same person should .preserve his or her right as long as they continue, there is. in principle no reason why, if the right passes by descent or by operation of law from one person to another both being under disability, it should not be saved in favor of the one as well as of the other. .tJJWF lax
*194 if the statute has provided for this lapping of disabilities and made it effectual to save the right from the bar by time, there is of course no place for general reasoning on the subject. But upon comparing the 8th section of the act of 1796 which contains the savings with respect to personal actions, with the 3d section which contains the savings with respect to lands, we are of opinion that there is no substantial ground for a difference of construction upon this point. And upon careful examination of the 8th section we are of opinion that there is nothing in its language any more than in its general intent and objects which requires, or in view of the train of decisions upon the ot.her section would authorize the construction that the fight of action is thereby saved indefinitely by an accumulation of disabilities in the same person or in a succession of persons. And considering, the decisions upon the 3d section as inconsistent with the single one referred to as applicable to the 8th section, we regard them as in effect overruling that case, and authorizing a departure from it.
Without entering into an elaborate criticism of the 8th section, we observe that in stating the disabilities which are to take the case from the operation of the previous limitation, they are stated singly and disjunctively, being separated by the conjunction “or,” expressed or understood. And although in speaking of their removal, they are again enumerated with the conjunction “and,” as the connecting word. It is evident that this word may be as it often is, understood as if “or” were used in its place; otherwise, and if the clause is to be taken literally, and is to be applied throughout to the same person, the person who is under the disability of infancy must not only becomé of age, but must also become discovert though never married, and sane though never insane, and free though never imprisoned, and must return to the country though never out of.it, before the limitation will begin to run. We think no fair inference can be drawn from the use of the word *195 “and,” in favor of adding the several disabilities. And we construe the section as merely giving to any. one laboring under either of them, the same time after being freed from that disability, which is before prescribed for ordinary cases.
Limitation in an action of detinue may be relied up on, though not specially pleaded: (Stanley vs Earl, 5 Lilt.)'
Where the jury would be bound to find such verdict as they did, no new trial should be granted, though the Court may have misdirected the jmyupon the law of the ease.
Cates for plaintiff; M. Brown for defendant
That the statute of limitations may be relied on in an action of detinue without being specially pleaded, follows from the doctrine established in the case of Stanly vs Earl, (5 Littell’s Rep.) and since followed, that the adverse possession of a chattel for such a period as to bar all actions for its recovery by the person who may have had the ownership, confers the right of property upon the possessor. And he may undér the general issue, prove in denial of the plaintiff’s right, an absolute title in himself, whether acquired by length of possession or by any other means.
Then although we cannot decide whether the possession of these slaves was adverse or subordinate to the title of Eliza 'Satterfield at the time of her marriage, because the question is one of inference not conclusively established by the evidence or the verdict, yet as it is conclusively proved that Ihe possession was adverse for more than five years before the commencement of the action, we do decide upon the principles already stated that whether the possession was adverse or amicable before and at the time of the marriage, the present action is barred by lapse of time and the operation of the statute, because if the right vested in the husband he wa.s under no disability, and if it did not so vest but remained in the wife as a chose in action, the. right of action existing in her before her marriage could not be preserved by the accumulation of successive disabilities, but was lost by the lapse of five years without suit brought after her arrival at full age.
Upon the evidence therefore, the jury were bound to find for the defendant, and might have beén instruderl so to find. ' •
Wherefore the judgment is affirmed.